PEEPLES & PEEPLES v. WARREN.

1. LAW CASE—THE FINDINGS OF FACT by a Circuit Judge in a law case submitted to him by consent are final.
2. APPEAL—PERSONAL PROPERTY.—Whether personal property has been delivered is a mixed question of law and fact, and this Court has

no jurisdiction to review a finding on this point, unless the Circuit Judge was influenced or controlled in such finding by error of law.

3. ESTOPPEL.—Defendant not estopped under the facts in this case from setting up title in himself.

4. NOTICE to attorney is notice to client.

5. PERSONAL PROPERTY.—Whether the delivery of a part of a mass of property is delivery of whole depends on the intention of the parties and is a question of fact.

6. EVIDENCE.—In proving a *parol* contract *verbal* reference may be made to a mortgage not in controversy without producing it or accounting for its loss.

7. EXCEPTION too general.

Before WITHERSPOON, J., Hampton, August, 1897. Affirmed.

Two actions by Peeples & Peeples against E. F. Warren, one in claim and delivery, and the other for damages for taking possession of same property. The Circuit decree is as follows:

By consent of counsel, a jury trial was waived, and the two above entitled cases were heard together upon testimony taken and reported by the clerk of court, and the argument of counsel. The first entitled action was commenced October 7th, 1896, to recover damages for the alleged unlawful taking possession by the defendant of a certain engine and boiler and attachments, described in each complaint. The second entitled action was commenced December 12, 1896, in claim and delivery to recover possession of the same property, or the value thereof. In the second action, the defendant pleads the pendency of the first action as a bar to a recovery in the second action, and in each of said actions the defendant denies that plaintiffs are the owners or entitled to the possession of the property, and claims that he is the owner of the property in dispute, having purchased it from H. M. Ard and M. R. Mixson. The defendant claims that one H. M. Preacher sold the property in dispute to the said Ard and Mixson. The plaintiffs also claim to have purchased said property from the said H. M. Preacher. It appears that the engine and boiler and the attachments

referred to in each of the plaintiffs' complaints belonged to
Mrs. C. S. Preacher, who placed said property in the pos-
session of G.W. Preacher, her husband, and H. M. Preacher,
her son, who conducted a saw mill business for her, under
the name of Preacher & Son, agents. I am satisfied that
H. M. Preacher had the control and management of said
business, with the authority and sanction of his mother,
Mrs. C. S. Preacher. While H. M. Preacher was conduct-
ing said saw mill business for his mother, the plaintiff pro-
posed, and H. M. Preacher consented and admitted, plaintiffs
to join in said business as partners, the plaintiffs contribut-
ing some additional mules, machinery, a tramroad and tim-
ber off of a certain tract of land. After the business had
been conducted for a while under this arrangement, the
plaintiffs sold their interest in the saw mill business, taking
the joint and several notes of Mrs. C. S. Preacher, her hus-
band, G. W. Preacher, and her son, H. M. Preacher, for
some $2,000, March 10, 1894, for the purchase money, and
a chattel mortgage of the property contributed by the plain-
tiffs to the business, not including the engine and boiler in
dispute, to secure the payment of the purchase money.
About the middle of January, 1895, the aforesaid debt to
plaintiffs being past due, secured by the mortgage as afore-
said, the plaintiffs and H. M. Preacher entered into negotia-
tion for the purpose of settling the aforesaid indebtedness to
plaintiffs. At this point there is a direct and irreconcilable
conflict in the testimony as to the result of such negotiations.
The plaintiffs contend that H. M. Preacher on this occasion
sold them the entire plant or property used in said saw mill
business, including the engine and boiler of Mrs. Preacher,
not embraced in plaintiffs' mortgage, in satisfaction of the
indebtedness aforesaid to said plaintiffs. That plaintiffs
took possession of the mules embraced in their mortgage,
and claimed that the engine and boiler in dispute were to
be turned over to plaintiffs by the latter part of the follow-
ing week, after H. M. Preacher had finished filling an order
for lumber. H. M. Preacher admits that the negotiations

contemplated a surrender of the entire mill outfit, including the engine and boiler in dispute, upon the condition that plaintiffs would pay one Solomons a balance of $175 due and secured by a chattel mortgage of said engine and boiler. That the plaintiffs informed him, before the day fixed for turning over the engine and boiler, that they would not pay off the balance due and secured by a mortgage of the engine and boiler, and that he (H. M. Preacher) then paid said balance, and sold the engine and boiler to H. M. Ard and M. R. Mixson (through whom the defendant claims), in payment of his indebtedness to them as employees at the mill. When the plaintiffs went to take possession of the engine and boiler, Ard and Mixson informed them of their purchase of the property, and refused to deliver it to the plaintiffs. Testimony was introduced to prove subsequent declarations made both by the plaintiffs and by H. M. Preacher, inconsistent with their testimony as to the terms of their contract or agreement. The agreement between the parties was oral. Plaintiffs introduced a pencil memorandum made at the time by a clerk and a nephew of one of the plaintiffs, to show that the engine and boiler were to be included in the sale. This memorandum is not signed by any one, and contains this statement: "These effects to be turned over to Peeples & Peeples not later than 19th January, 1895," which tends to show that the contract between the parties was not executed, as the delivery was to be made at a future date. The plaintiffs claim that the debt due them and secured by the chattel mortgage was satisfied by the contract of sale, and yet the plaintiffs retain the notes uncancelled, and there is no evidence that the mortgage securing the same has been surrendered or cancelled. This circumstance is by no means conclusive, yet tends to show that the contract of sale between the parties was not completed or executed. I am satisfied from the evidence, and I find as matter of fact, that H. M. Preacher was fully authorized by his mother, Mrs. C. S. Preacher, as her agent, to control and manage the saw mill business, and to sell or otherwise dispose of

her engine and boiler as he thought would best subserve her interest. But in order to recover in either of the above actions, the plaintiffs must show by the preponderance of the evidence that they have acquired title to the engine and boiler by a complete executed contract of sale of the property. The conflicting evidence fails to satisfy me that the plaintiffs acquired title to the engine and boiler referred to in plaintiffs' respective complaints, under a sale of said property by H. M. Preacher. The negotiations between the parties contemplated the surrender of the property, the title to which vested in plaintiffs under their chattel mortgage. Plaintiffs had no lien or special claim upon or to the engine and boiler, which could not lawfully be disposed of until the balance of the debt secured by a mortgage of this property had been provided for. If the sale of the engine and boiler was upon the condition that the plaintiffs would pay the balance of the mortgage debt on said property, and plaintiffs, before taking possession of said property, notified H. M. Preacher that they would not pay said debt, the title to the property in dispute has never been acquired by the plaintiffs. I do not think the pendency of the first action would be a bar to a recovery in the second action, as alleged in defendant's answer. An action for damages for the unlawful taking possession of personal property would not exclude an action in claim and delivery to recover the possession of the same property. The plaintiffs contend that the defendant is estopped from claiming to be entitled to the property in question.

The doctrine of estoppel is invoked by the plaintiffs under the following circumstances: Soon after Ard and Mixson refused to surrender the engine and boiler to plaintiffs, the plaintiffs instituted an action of claim and delivery against Ard and Mixson. The defendant in these actions, as attorney in that action, in the answer filed, alleged that the title was in Ard and Mixson. Pending and before the trial of said action, the defendant agreed to buy the engine and boiler from Ard and Mixson, if the said Ard and Mixson

were successful in said suit.  At October term, 1895, said action of plaintiffs against Ard and Mixson came on for trial, and at the close of plaintiffs' testimony, the plaintiffs' counsel consented to an order of nonsuit.  Soon after the granting of said nonsuit, Ard and Mixson called upon the defendant for a settlement; whereupon, the defendant went to the plaintiffs' counsel upon three occasions, notified said counsel of his conditional purchase of the engine and boiler, and urged plaintiffs' counsel to renew the action if plaintiffs intended to proceed further in the matter, and thereby relieve defendant from paying over the money to Ard and Mixson, under his contract with them.  Having notified plaintiffs' counsel that he would feel compelled under his agreement to pay Ard and Mixson unless some further action was taken by plaintiffs within a given period, and no such action having been taken within said period by plaintiffs, the defendant paid Ard and Mixson the purchase money for the engine and boiler, which had been moved by Ard and Mixson to the defendant's plantation.  No action was commenced thereafter against Ard and Mixson by plaintiffs for the engine and boiler until some time in January, 1896, a few days after Ard and Mixson had commenced an action against the plaintiffs for damages alleged to have been sustained by them, resulting from plaintiffs' action against said Ard and Mixson, terminating in a nonsuit as aforesaid. The defendant also represented Ard and Mixson in the second suit, and also set up title in Ard and Mixson.  The second suit by plaintiffs resulted in a verdict in favor of the plaintiffs, but as defendant was not made a party to either of plaintiffs' actions against Ard and Mixson, he is not bound by the proceedings or the result of either of said actions.  The defendant ought to have interposed his title to the engine and boiler in the plaintiffs' second action against Ard and Mixson; but the plaintiffs have no cause for complaint on account of such omission, as plaintiffs' counsel had been fully informed of defendant's claim of the engine and boiler; therefore, he instituted the second action

against Ard and Mixson, and proceeded to trial without making the defendant a party to said action; and, under the circumstances, it does not appear how plaintiffs have been misled or injured by the answer filed by the defendant, as attorney, alleging title to the property in dispute to be in Ard and Mixson. Such answers are admissible as evidence to show contrary declarations by the defendant as to the ownership of the property in dispute; but I conclude that they cannot, under the facts of this case, have the effect of an estoppel in actions at law, where plaintiffs' right to recover in either of the above entitled actions must depend upon their establishing by a preponderance of proof that they have acquired the title to the property in dispute. As already stated, plaintiffs have failed to establish title to the property in dispute by such proof. I find, as matter of fact, that the plaintiffs have failed to show that they have acquired the lawful title to the engine and boiler and attachments, or that the defendant has deprived plaintiffs of the lawful possession of said property, as described in the above entitled cases. I conclude, as matter of *law*, that each of the two above entitled actions must be dismissed with costs, and it is hereby so ordered and adjudged.

From this judgment plaintiffs appeal.

*Mr. W. S. Tillinghast*, for appellants, cites: *Sale and delivery:* 2 Strob. L., 309; 21 S. C., 391; 2 Strob. L., 317; 2 Hill, 297; 12 Mass., 200. *Title cannot be acquired from one having no title:* 10 Rich., 336. *Purchase with notice of outstanding claim will not be sustained:* 6 S. C., 167; 3 Strob. Eq., 134. *Defendant estopped from claiming title:* 45 S. C., 512; 3 Strob. L., 372.

*Messrs. Bellinger, Townsend & O'Bannon*, contra, cite: *Finding of fact in law case by Circuit Judge final:* 50 S. C., 502. *Defendant not estopped:* 26 N. E. R., 394. *Conditional sale fails when buyer refuses to perform condition:* 21 S. C., 524. *Delivery of part not necessarily delivery of*

*all:* 64 Barb., 391.  *Testimony as to the Solomon's mortgage admissible:* 2 Bail., 328; 43 S. C., 91; 21 S. E. R., 143, 925.

March 23, 1898. The opinion of the Court was delivered by

MR. JUSTICE JONES.  These two cases, by consent of counsel, were tried together by Judge Witherspoon without a jury.   One case was in claim and delivery to recover possession of an engine and boiler, and the other to recover damages for an alleged unlawful taking possession of the same property.   The Circuit Judge found for the defendant and dismissed the complaints.   Reference to his opinion, which is reported, may be made for the facts.

The pleadings put in issue the title and possession of plaintiffs, and defendant set up title in himself.   Both parties claimed under Mrs. C. S. Preacher, who conducted the business of sawing lumber.   The plaintiffs held a past due chattel mortgage against Mrs. Preacher, covering some mules and some machinery connected with the saw mill business, but not including the engine and boiler in question; and plaintiffs' contention was that Mrs. Preacher through her agent sold them the property used in the saw mill business, including the said engine and boiler, in settlement of the mortgage debt; that this trade was effected January 12, 1895, and that the property, including the engine and boiler, were to be turned over to plaintiffs not later than January 19, 1895; that pursuant to the agreement the mules were actually delivered to plaintiffs, and that when they went to take charge of the engine and boiler, they found that H. M. Ard and M. R. Mixson were in possession of the property, claiming to have purchased the same from Mrs. Preacher.   Defendant claimed to have bought the property in dispute from Ard and Mixson; that plaintiff had never acquired possession of said property; that the engine and boiler were to be turned over to plaintiff on condition that they take up a mortgage thereon for a balance of $175, due to another party; that after receiving the mules and some other property, covered by their mort-

gage, plaintiffs informed Mrs. Preacher's agent that they could not pay this mortgage; that thereupon Mrs. Preacher paid off the mortgage, and sold and delivered the engine and boiler to H. M. Ard and M. R. Mixson in payment of services due them as sawyer and wheelwright. The Circuit Judge held that, in order to recover in either of the above cases, the plaintiffs must show by the preponderance of the evidence that they have acquired title to the engine and boiler by a complete executed contract of sale of the property, and that the conflicting evidence failed to satisfy him that the plaintiffs acquired title to the engine and boiler under a sale of said property. He further said: "I find, as matter of fact, that the plaintiffs have failed to show that they have acquired the lawful title to the engine and boiler and attachments, or that the defendant has deprived plaintiffs of the lawful possession of said property, as described in the above entitled actions."

These being cases at law, we have no jurisdiction to review the findings of fact by the Circuit Judge. By consent of counsel, he became the trier of the issues of fact as if sitting as a jury. Upon conflicting evidence he has found for the defendant. His judgment thereon is final, unless some error of law is duly excepted to this Court.

1. It is excepted that he erred in holding that a sale and payment of the purchase money did not constitute delivery. It does not appear that he so held. On the contrary, he held that the contract of sale was not complete and executed. Nor does he hold that the plaintiff had paid the purchase money of the property in dispute.

2. It is excepted that the Circuit Judge erred "in holding and deciding that there was no legal delivery to plaintiffs of the engine and boiler, and that the pencil memorandum referred to in the decree tended to negative the legal delivery arising from the sale and payment of purchase money." As to the pencil memorandum, which is in these words, "These effects to be turned over to Peeples & Peeples not later than 19th January, 1895," the

Circuit Judge did not hold as alleged, but he held that it "tends to show that the contract between the parties was not executed, as the delivery was to be made at a future day." We cannot say that he erred as matter of law in holding, if he did so hold, that there was no legal delivery to plaintiffs of the engine and boiler. Whether the engine and boiler were actually or constructively delivered to plaintiffs by the agent of Mrs. Preacher, was a question of fact. Even if the question of delivery is a mixed question of law and fact, this Court has no power to reverse the findings thereon by the Circuit Court in a case at law, unless that finding was influenced or controlled by some error of law. This Court, in such case, cannot consider the evidence, reach an independent conclusion on the facts different from that reached by the Circuit Court, and then deduce therefrom that the Circuit Court erred as matter of law. This would be to assume jurisdiction to review findings of fact in a case at law. Unless specific error of law, influencing such finding, be pointed out, we are bound to assume that the Court applied sound principles of law in reaching his conclusion.

3. We agree with the Circuit Judge in his conclusion as to the question of estoppel against the defendant to assert title in himself; but, even if he erred on this question, the error was harmless, in view of his conclusion that plaintiffs failed to establish title to the property in themselves. Defendant's title may be defective, and yet plaintiffs may not be entitled to recover.

4. The Circuit Judge did not hold that a mortgage chattel could not be sold subject to a mortgage thereon, as excepted to in the fourth exception. The only sentence in his opinion which could possibly be taken as a basis for this exception is this: "Plaintiffs had no lien or special claim upon or to the engine and boiler, which could not lawfully be disposed of until the balance of the debt secured by a mortgage of this property had been provided for." The Judge, no doubt, had in mind the provisions of

37—51

section 277 Criminal Statutes, relating to sales of personal property under lien.

5. The Circuit Judge did not hold that such estoppel could not arise in a law case like this, as alleged in the fifth exception. What he correctly held was that the answers of Ard and Mixson, in the case of *Peeples & Peeples* v. *Ard and Mixson*, prepared by the defendant as their attorney, could not, under the facts of this case, have the effect of an estoppel in an action at law where the plaintiffs' right to recover must depend upon their establishing, by the preponderence of the evidence, that they have acquired the title to the property in dispute.

6. In regard to the sixth exception. This relates largely to matters of fact. The Circuit Judge found as matter of fact that plaintiffs' counsel had been fully informed of defendant's claim that he had purchased the engine and boiler from Ard and Mixson, before plaintiffs instituted the suit against Ard and Mixson. This being the fact, there was no error of law in holding that notice to plaintiffs' counsel of defendant's claim of the property in question was notice to the plaintiffs.

7. The seventh exception, alleging error in not holding that defendant was notified of the title of appellants to the engine and boiler, is untenable. It relates to a question of fact inconsistent with the facts found by the Circuit Judge.

8. The eighth exception, alleging error in not holding that defendant having notice of appellants' title, could not in law acquire a better title than Ard and Mixson had to the engine and boiler, is not well taken. It assumes that appellants had title to the property in question, whereas the Circuit Judge has found that he had no title thereto, and relates to defendant's defense of title, whereas plaintiffs were bound to show title or right of possession in themselves, which the Circuit Judge has found as matter of fact they failed to do.

9. It is alleged in the ninth exception that the Circuit Judge erred in not holding that delivery of part is delivery

of the whole. This exception is very general and indefinite, but we assume it has reference to the contention of plaintiffs, that Mrs. Preacher having delivered to plaintiffs the mules mortgaged by her to plaintiffs, pursuant to the arrangement of settlement made on January 12, 1895, thereby delivered the engine and boiler, which with the mules and other property constituted the saw mill property. Whether the delivery of a part of a mass of property shall be considered a delivery of the whole, would depend in one essential particular on the *intention* of the parties to the contract of sale, and the existence of such an intention is a question of fact. The Circuit Judge has found as matter of fact that "the negotiations between the parties contemplated the surrender of the property, the title to which vested in plaintiffs under their chattel mortgage." There is nothing in the findings of the Circuit Judge to show that Mrs. Preacher intended that the delivery of the mules, or part of the mill plant mortgaged to plaintiffs, should be deemed a delivery of the engine and boiler; on the contrary, the findings of fact are inconsistent with any such intent. The delivery of the mules may be referable to the mortgage covering them, and as to such property, delivery did not convey title to plaintiffs, they already having title thereto, the condition of the mortgage being broken.

10. The tenth exception, alleging that the Circuit Judge erred in holding that a sale of a chattel subject to a mortgage is a conditional sale, is unfounded. The Judge did not so hold. What he held was that "plaintiff had no lien or special claim upon or to the engine and boiler, which could not lawfully be disposed of until the balance of the debt secured by a mortgage of this property had been provided for. If the sale of the engine and boiler was upon the condition that the plaintiffs would pay the balance of the mortgage debt on the property, and plaintiffs before taking possession of said property notified H. M. Preacher (agent of Mrs. Preacher) that they would not pay said debt,

the title to the property in dispute has never been acquired by the plaintiffs."

11. The eleventh exception, assigning error "in overruling the objection of appellant to the testimony as to Solomon's mortgage, which does not appear on the records, the mortgage not being produced or its loss accounted for," can not be sustained—first, because it does not appear that any objection was made when the testimony was offered; and, second, because the testimony, for the purpose offered in this case, was competent, had it been objected to. Defendant had the right to offer evidence of the terms of the contract between plaintiffs and Preacher, which, according to the version of defendant, necessarily involved mention of the Solomons mortgage.

12. As to the twelfth and thirteenth exceptions, alleging (12) error in holding that Ard and Mixson purchased *cum onere*, the consideration of their alleged purchase being an antecedent indebtedness, and (13) error in not holding that the attempted sale by Preacher to Ard and Mixson was a legal fraud, are too general and indefinite for consideration; but, besides this, they relate to questions of fact—facts, too, which appertain to the defense of defendants; whereas the Circuit Judge has found that plaintiffs failed to establish by evidence title in themselves.

The judgment of the Circuit Court is affirmed.