STATE v. SHAW.

1. NEW TRIAL—PRACTICE.—THIS COURT has power to grant a new trial in law case where there is *no* evidence to support the verdict on appeal from motion refusing new trial on that ground.

2. MASTER AND SERVANT—PARENT AND CHILD—MANSLAUGHTER—MURDER—MALICE—CHASTISEMENT.—When a man occupies the relation

of parent and child to a boy in his employ, he has the right to chastise him with a proper instrument, and if the chastisement is immoderate and excessive, and the boy dies thereof, he is guilty of manslaughter; but the jury may conclude from all the facts and circumstances that the chastiser intended to take the life of the boy, and from such facts infer malice, and find chastiser guilty of murder.

Before KLUGH, J., Sumter, June term, 1902. Affirmed.

Indictment against Nelson J. Shaw for murder. From judgment on verdict of guilty with recommendation to mercy, defendant appeals.

*Messrs. Lee & Moise,* for appellants, cite: *This Court has power to grant a new trial when there is no evidence to support the verdict:* 45 S. C., 483; 64 S. C., 344. *Moderate chastisement is excusable homicide; immoderate and excessive chastisement is manslaughter:* 2 Bish. Crim. L., secs. 685 and 690; 3 Green. Ev., 134; 2 Whar. Crim. Law, sec. 1014; 1 Russell on Crimes, 670, 763; 2 Bish. Cr. L., secs. 683, 684, 685.

*Solicitor John S. Wilson,* contra (oral argument).

December 13, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. The record contains the following statement of facts: "The defendant, appellant, was indicted for the murder of Nathaniel Williams, a boy in his employ as a servant, whose death he caused by whipping him. He was tried before his Honor, Judge J. C. Klugh, and a jury, at Sumter, at the June term, 1902, of the Court of General Sessions. The State put in evidence the small leather strap with which the whipping was done, a proper instrument for chastisement; but the contention on the part of the State was that the whipping was cruel, immoderate and excessive, causing the death of the boy, and hence that the defendant was guilty of murder. The deceased was a stout-built boy, aged about twelve or thirteen years, bright and intelligent,

and in good health. He was at the time of his death and had been for four or five years prior thereto in the employ and service of the defendant, working for and waiting upon him about his dwelling and store and clerking for him occasionally. The whipping occurred on Saturday, November the 9th, 1901, for a petty theft committed on the previous Thursday. The defendant's defense was the plea of not guilty; that the chastisement was moderate and proper, and that the boy's death was wholly unintentional and through misfortune; that at most it was a case of manslaughter. The jury found the prisoner guilty of murder with a recommendation to mercy.

"Defendant's counsel moved before his Honor upon the minutes for a new trial upon the ground that the verdict of the jury was not warranted by the evidence; that there was absolutely no evidence of murder or malicious homicide in the case to sustain the verdict. That the defendant having the lawful right to inflict moderate chastisement, if he inflicted the same and death ensued, it was at most manslaughter and not murder; and hence that the conviction was illegal and the verdict should be set aside. After hearing argument from the defendant's counsel, the presiding Judge overruled the motion, and sentenced the prisoner to imprisonment for life in the State Penitentiary. Due and timely notice of intention to appeal to the Supreme Court was served upon the solicitor."

The following are the appellant's exceptions:

"1. For that his Honor, the presiding Judge, erred, as matter of law, it is respectfully submitted, in refusing defendant's motion for a new trial, when there was no testimony whatever in the case to sustain the conviction of the prisoner of the crime of murder.

"2. For that his Honor, the presiding Judge, erred, as matter of law, it is respectfully submitted, in refusing defendant's motion for a new trial, when the evidence in the case went no further than to make out, at most, a case of manslaughter."

The first question argued by the appellant's attorneys was whether this Court had the power to grant a new trial on the ground mentioned in the exceptions. Whatever doubts may heretofore have existed as to the power of the Supreme Court to grant a new trial when there is *no* evidence to support the verdict, the rule is now well established by recent cases that it has such power. The reason for the rule is, that it is error of *law* for the Circuit Court to refuse to set aside a verdict without *any* evidence to support it.

We will next consider whether there was any testimony whatever from which the jury had the right to infer malice on the part of the prisoner in causing the death of the boy, who died immediately after the whipping. We have never seen a case where the circumstances attending the homicide were more harrowing and revolting. There was testimony that the boy was stripped naked and whipped for one or more hours, with a leather strap having a knot at one end; that there were more than a hundred welts raised upon him, which covered his body from his head to his feet; that after blisters were raised over his body, they were bursted by strokes from the strap; that the appellant resumed the whipping after being interrupted for awhile by a visit from a person who had called to see him; that the boy's privates were most horribly mutilated, and that his pitiful appeals for mercy were disregarded. The appellant's attorneys in their argument contended that the jury could not find the prisoner guilty of murder, "because the appellant here stood towards the deceased *in loco parentis,* with the lawful right to administer chastisement with a proper instrument for that purpose; and if the chastisement was moderate and death ensued, it was, as a matter of law, excusable homicide, as contended by the appellant; but if, on the other hand, it was immoderate and excessive, as contended by the State and death ensued, it was as matter of law, manslaughter and could not under that state of facts be murder. Hence his

conviction of the crime of murder was illegal, and the refusal by the Court of his motion for a new trial *was error of law."* The general proposition for which they contend is amply sustained by the authorities cited in their argument. The jury, however, in the cases mentioned, must be satisfied that the chastisement was inflicted for the purpose of correction and not for the purpose of destroying the life of the person upon whom the punishment is inflicted. In the note at page 658 of Archbold's Cr. Pr. & Pl. (vol. I.), it is said: "If death ensue from a master's chastisement of his slave, inflicted apparently with a good intent for reformation or example, and with no purpose to take life or put it in jeopardy, the law would doubtless tenderly regard every circumstance, which, judging from the conduct generally of masters towards slaves, might reasonably be supposed to have led the party into excess. But where the punishment is barbarously immoderate and unreasonable in the measure, the continuance and the instruments, accompanied by other harsh uses and painful privations of food, clothing and rest, it loses all character of correction *in faro domestico,* and denotes plainly that the master must have contemplated a fatal termination of his barbarous cruelties, and in such case if death ensue, he is guilty of murder." Citing *State* v. *Hoover,* 4 Dev. & Bart. Rep., 305. The facts and circumstances surrounding the homicide were such as to warrant the jury in drawing the inference that the purpose and intention of the prisoner was to take the life of the boy. If such was the case, the jury had the right to infer malice and to find the prisoner guilty of murder. There being, therefore, some evidence proper to be submitted to the jury upon the question of malice, it was not error of law to refuse the motion for a new trial. The exceptions must, therefore, be overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.